UNITED STATES of America,
Appellee,

v.

Charles BELK, Defendant–Appellant.

Docket No. 02–1636.

United States Court of Appeals,
Second Circuit.

Argued: Sept. 9, 2003.

Decided: Oct. 9, 2003.

Yuanchung Lee, The Legal Aid Society, Federal Defender Division Appeals Bureau, New York, NY, for Appellant.

David P. Burns, Assistant United States Attorney (James G. Cavoli, Assistant United States Attorney, of counsel, James B. Comey, United States Attorney for the Southern District of New York, on the brief), United States Attorney's Office, Southern District of New York, New York, NY, for Appellee.

Before: McLAUGHLIN, CABRANES, and B.D. PARKER, JR., Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

Defendant Charles Belk appeals from a judgment of conviction entered on October 23, 2002, in the United States District Court for the Southern District of New York (Laura Taylor Swain, *Judge*), after a jury trial in which he was found guilty of one count of unlawful possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). At sentencing, the Court found that he had been convicted of three prior violent felonies and sentenced him primarily to 235 months' imprisonment under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).

On appeal, defendant asserts that the District Court abused its discretion by refusing to bifurcate his trial so that the jury could consider separately (i) whether he was in unlawful possession of a firearm and (ii) whether he had previously been convicted of a felony. He argues that bifurcation was required so that the jury would not prejudicially learn of Belk's status as a convicted felon until it first addressed the sole disputed issue at trial—whether he had possessed a firearm. Defendant also asserts that he should be resentenced because the District Court misunderstood its authority to depart downwardly.

■ We hold that a district court does not err when it refuses to bifurcate a defendant's jury trial to provide for separate consideration of the elements of a felon-in-possession charge. We also reject defendant's challenge to his sentence.[1]

---

1. Defendant also argues on appeal that his conviction must be overturned under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because the jury in this case found only that defendant had been convicted of a single prior felony. The Court, rather than the jury, found that he had been convicted of *three* prior felonies—a finding resulting in a 19-year, 7-month sentence under the ACCA, 18 U.S.C. § 924(e), which was higher than the 10-year maximum term of imprisonment allowed under 18 U.S.C. § 922(g)(1). We explicitly rejected the same argument in *United States v. Santiago*, 268 F.3d 151 (2d Cir.2001), noting that *Apprendi* made an exception for proof of prior convictions. *Id.* at 155 (citing *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348). We thus reject defen-

## I. Background

The Government charged defendant in a one-count indictment, alleging that he had unlawfully possessed a firearm on September 13, 2000, after having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).[2] The Government also alleged that he had been convicted of three prior violent felonies, thereby rendering him subject to a mandatory prison term of not less than 15 years under the ACCA, 18 U.S.C. § 924(e).[3]

Defendant did not contest that he had been convicted of a prior felony for the purposes of 18 U.S.C. § 922(g)(1) and, before trial, the parties agreed to a stipulation as follows:

Charles Belk, the defendant, was, prior to September 13, 2000, convicted in New York State Supreme Court, upon his plea of guilty, of a crime punishable by imprisonment for a term exceeding one year.

Thus, the only disputed issue for the jury to determine at trial was whether defendant had in fact been in possession of a weapon that had traveled in interstate commerce.

In a pretrial motion *in limine*, defendant moved "to bifurcate the trial on the issues of possession of the firearm and his prior criminal record." *United States v. Belk*, No. 01 Cr. 180(LTS), 2002 WL 237837, at *1 (S.D.N.Y. Feb. 19, 2002). Defendant argued that "bifurcation is necessary to prevent prejudice that would result from the jury being presented with evidence of prior convictions when it considers the issue of possession of a firearm." *Id.* Under defendant's proposal, the jury would not be told about the prior conviction at the start of trial, but would instead be told as follows: "[This] case does not involve 'simple possession of a weapon,' but rather there is an additional critical element that will be submitted ... for [your] consideration after [you] decide[ ] the threshold issue of possession." Only if the jury determined that the Government had proven the possession element would the Court inform the jury that it must also find that defendant had been convicted of a felony prior to his possession of the gun on September 13, 2000.

The District Court rejected defendant's proposal, relying on our decision in *United States v. Gilliam*, 994 F.2d 97 (2d Cir. 1993), in which we held that a district court cannot, by approving a stipulation of the parties, remove from the jury's consideration altogether the issue of defendant's prior conviction in an 18 U.S.C. § 922(g)(1) case. In *Gilliam*, we explained that such a stipulation is improper because it "violates the very foundation of the jury system" by "remov[ing] from the jury's consideration an element of the crime, leaving

dant's argument, which was also rejected by the District Court, mindful of defendant's desire "to preserve the issue for possible review by the Supreme Court" and "to avoid a possible procedural default ruling on Section 2255 review should *Santiago* be overruled in the future." Def.'s Br. at 45–46.

**2.** The text of 18 U.S.C. § 922(g)(1) states, in relevant part, as follows: "It shall be unlawful for any person ... who has been convicted in any court of[ ] a crime punishable by imprisonment for a term exceeding one year [*i.e.*, a felony] ... to ship or transport in interstate or foreign commerce, or possess in

or affecting commerce, any firearm or ammunition ...."

**3.** The text of 18 U.S.C. § 924(e) states, in relevant part, as follows: "In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years ...."

the jury in a position only to make findings of fact on a particular element without knowing the true import of those findings." *Id.* at 100–01. In the instant case, the District Court held that "[b]ifurcation, like a stipulation removing entirely the issue of the prior felony from the jury's consideration, is improper elimination of a 'critical element of [Section] 922(g)(1),' and is, therefore, impermissible." *Belk,* 2002 WL 237837, at *2 (quoting *Gilliam,* 994 F.2d at 101) (alteration in original).

The District Court also determined that the "risk of unfair prejudice [through the introduction of the prior conviction] does not outweigh substantially the probative value of the evidence where, as here, it is presented by way of stipulation to the fact of a single prior felony conviction and will be accompanied by a curative instruction." [4] *Id.* at *2. The Court noted that, under *Gilliam,* "no unfair prejudice can arise from the presentation of evidence of the fact of a prior felony conviction in a Section 922(g) case." *Id.; see Gilliam,* 994 F.2d at 100 ("Where the prior conviction is essential to proving the crime, it is by definition not prejudicial."). [5]

At trial, the Government presented evidence through several officers of the New York City Police Department ("NYPD") and a special agent of the Bureau of Alcohol, Tobacco and Firearms ("ATF") that on the night of September 13, 2000, in the Bronx, defendant was arrested for carrying a loaded Colt .45 semi-automatic pistol, which had traveled in interstate commerce. The defense theory was that the officers fabricated the circumstances of the arrest and planted the gun in order to cover up their aggressive tactics, which had resulted in injuries to defendant.

The jury found defendant guilty of carrying a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). At sentencing, the Court determined that defendant had in fact been convicted of three prior violent felonies, and sentenced defendant to 235 months' imprisonment as an "Armed Career Criminal" in accordance with 18 U.S.C. § 924(e).

## II. The Bifurcation Claim

Defendant argues that bifurcation at trial of the elements of his felon-in-possession charge under 18 U.S.C. § 922(g)(1) was required in this case to eliminate the risk

---

**4.** The District Court gave the jury the following curative instruction when the prior felony conviction was presented to the jury:

> The particular stipulation that you have just heard concerned a prior conviction for a crime committed by Mr. Belk. At the conclusion of the trial, I'll provide you with additional instructions concerning this conviction. However, at this time, I want to caution you that the conviction is only to be considered by you for the fact that it exists and for nothing else. You are not to consider it for any other purpose. You are not to speculate as to what it was for. You may not consider the prior conviction in deciding whether it was more likely or not that Mr. Belk was in knowing possession of the gun that he is charged in this case with possessing, which is a disputed issue in this case.

The Court gave a similar limiting instruction as part of its jury charge. To further limit any possible prejudice, the Court agreed to "permit redaction of the indictment to the extent that it identifies the nature of [the] crime[s] and insofar as it refers to three previous convictions for violent felonies," *Belk,* 2002 WL 237837, at *1, and it instructed the Government "to refrain from characterizing Mr. Belk as a 'convicted felon' in its arguments at trial," *id.* at *3.

**5.** In Judge Walker's concurring opinion in *Gilliam,* he expressed the view that evidence of a prior conviction *can* be prejudicial, but that "in this or any other § 922(g)(1) case, the probativeness of such a stipulation will never be substantially outweighed by the risk of unfair prejudice it poses." *Gilliam,* 994 F.2d at 104–05 (Walker, J., concurring).

of unfair prejudice. He argues that this case is distinguishable from *Gilliam* because "*Gilliam* held only that the Government cannot be forced to accept a prior-felony stipulation that kept this element from the jury altogether," whereas the instant case addresses "a procedure separating [the] trial into two phases in which the prior felony element would be submitted to the jury . . . at the second stage" of the trial. Def.'s Br. at 26.

 Assuming that *Gilliam* does not go so far as to prohibit a District Court's bifurcation of the separate elements of a § 922(g)(1) charge, we think that *Gilliam* at least makes it clear that a district court's exercise of its discretion in refusing to bifurcate the elements of a § 922(g)(1) charge is not reversible error. In *Gilliam*, we explained that "[a] prior conviction is not prejudicial where the prior conviction is an element of the crime," because it "prove[s] the fact or issue that justified its admission [into evidence]." *Gilliam*, 994 F.2d at 100 (internal quotation marks omitted). In fact, as here, "[w]here the prior conviction is essential to proving the crime, it is *by definition* not prejudicial." *Id.* (emphasis added). Because a district court's admission into evidence of defendant's prior conviction in a § 922(g)(1) case—when accompanied by a proper curative instruction and limited to the fact of the conviction itself—is *by definition* not prejudicial, a district court cannot err by failing to take additional measures, such as bifurcation, intended to mitigate any asserted prejudice. We thus find no error.

The cases cited by defendant in support of his position that bifurcation was required are unavailing. For instance, in *United States v. Orena*, 811 F.Supp. 819 (E.D.N.Y.1992), Judge Weinstein, over the objection of the Government, withheld from the jury any evidence of the defendant's prior conviction where the defen-

dant was willing to stipulate to the fact of the conviction. We expressly disavowed this approach in *Gilliam*, and stated that Fed.R.Evid. 404(b) "does not authorize a district court, either by its own terms or by analogy, to take the issue of the defendant's prior conviction from the jury." *Gilliam*, 994 F.2d at 102.

Nor does our opinion in *United States v. Jones*, 16 F.3d 487 (2d Cir.1994), support defendant's claim. In that case, we held that a felon-in-possession charge in its entirety had to be bifurcated from other charges relating to a bank robbery in order to accord the defendant a fair trial. *Id.* at 492–93. However, we did not require or condone bifurcation of a single felon-in-possession charge under 18 U.S.C. § 922(g)(1).

Our holding here that a district court's refusal to bifurcate cannot constitute error is consistent with the conclusions of the Courts of Appeals for the Third, Tenth, Eleventh, and District of Columbia Circuits, each of which have held that failure to bifurcate the elements of a § 922(g)(1) charge is not reversible error. *See United States v. Mangum*, 100 F.3d 164, 170–71 (D.C.Cir.1996); *United States v. Dean*, 76 F.3d 329, 332 (10th Cir.1996); *United States v. Jacobs*, 44 F.3d 1219, 1221–23 (3d Cir.1995); *United States v. Birdsong*, 982 F.2d 481, 482 (11th Cir.1993). It is also consistent with the law of the First and Ninth Circuits, which have granted writs of mandamus to prevent trial courts from ever bifurcating the elements of a § 922(g)(1) charge. *See United States v. Barker*, 1 F.3d 957, 959 (9th Cir.1993), *reh'g denied and amended in part by* 20 F.3d 365 (9th Cir.1994) (reversing, on mandamus, a district court's attempt to bifurcate a felon-in-possession trial, and holding that bifurcation is never permissible); *United States v. Collamore*, 868 F.2d 24, 28 (1st Cir.1989) (same), *overruled, in*

*part, on other grounds by United States v. Tavares*, 21 F.3d 1 (1st Cir.1994) (en banc). No federal appellate decision has been brought to our attention holding that the failure of a district court to bifurcate the elements of a felon-in-possession charge was error, and we are not aware of any such decision.

In view of our holding that a district court does not err when it refuses to bifurcate the elements of a § 922(g)(1) charge, it is unnecessary to determine whether the reasoning in *Gilliam* would foreclose bifurcation altogether. *Cf. Barker*, 1 F.3d at 959; *Collamore*, 868 F.2d at 28. However, in light of the concerns we expressed in *Gilliam*, we note that it would be an extraordinarily unusual case in which bifurcation of the elements of a charge under § 922(g)(1) could possibly be appropriate. *See Gilliam*, 994 F.2d at 101 (noting the concern that, "[w]ithout full knowledge of the nature of the crime, the jury cannot speak for the people or exert their authority").

As a final matter, in *Gilliam* we noted the importance of certain measures to protect the defendant in a § 922(g)(1) trial because "the fact of a prior conviction may have an additional and adverse effect ... if the jury is unduly influenced by the prior conviction." *Id.* at 100. In this regard, we focused on the importance of a proper curative instruction explaining to the jury that it may only use proof of the prior conviction to satisfy the prior-conviction element of the crime. *Id.* We also noted the need for evidence of a prior conviction to be narrowly tailored to *the fact of the conviction* itself. *Id.* at 103. We explained that "[t]he *underlying facts* of the conviction ... are completely irrelevant to § 922(g)(1)" because "[t]he jury has no need to know the nature of the prior conviction." *Id.* "[A]ll that [the jury] needs to know," we emphasized, "is that

there was a prior conviction sufficient to sustain that element of the [§ 922(g)(1)] crime." *Id.* (citing *United States v. Borello*, 766 F.2d 46 (2d Cir.1985)).

In the instant case, the District Court conscientiously and carefully took precautions to protect defendant from undue prejudice. The Court delivered a curative instruction to the jury both at the time the evidence was introduced and in its jury charge. *See* note 4, *ante*. In addition, the evidence of the prior conviction was introduced by a one-sentence stipulation stating only that defendant was "convicted in New York State Supreme Court, upon his plea of guilty, of a crime punishable by imprisonment for a term exceeding one year." To further reduce prejudice, the Court redacted parts of the indictment and instructed the Government "to refrain from characterizing Mr. Belk as a 'convicted felon' in its arguments at trial." *See* note 4, *ante*. Under these circumstances, the method by which the District Court introduced evidence of defendant's prior conviction was not erroneous and was, indeed, commendable.

For the foregoing reasons, the District Court did not err when it refused to bifurcate defendant's trial to provide for separate consideration of the elements of the felon-in-possession charge under 18 U.S.C. § 922(g)(1).

### III. The Sentencing Claim

Defendant also challenges his sentence, arguing that the District Court erred in concluding that it lacked the authority to depart downwardly based on defendant's young age (14 to 15 years old) when he committed the three armed robberies that served as the predicate for his enhanced sentence under the ACCA.

The District Court determined that defendant's base offense level was 33, based

on U.S.S.G. § 4B1.4, because he is, as a matter of law under 18 U.S.C. § 924(e), an "Armed Career Criminal" with three prior violent felony convictions—namely, the three armed robberies he committed when he was 14 and 15 years old. The Court further determined that Belk fell into criminal history category VI—the highest possible level—on the basis of six *other* prior convictions, committed when defendant was between ages 20 and 31, yielding 16 criminal history points. (Defendant was 37 years old at the time of sentencing.) Based on an offense level of 33 and a criminal history category of VI, the Court determined the resulting recommended sentencing range to be between 235 and 293 months. The Court sentenced defendant primarily to 235 months' imprisonment.

Defendant had argued in a letter to the Court for a horizontal downward departure under U.S.S.G. § 4A1.3 "because [defendant's] criminal history category overstates the seriousness of his criminal history."[6] Specifically, the defense "ask[ed] that the Court depart downwardly to criminal history category IV." The defense asserted that the Court should "take into account the staleness of so many of the convictions, in particular the predicate offenses committed when [defendant] was barely a teenager."

However, as the Court pointed out, the predicate offenses underlying the "Armed Career Criminal" enhancement—three armed robberies committed when defendant was ages 14 and 15—were not actually included as part of defendant's criminal history points because, under U.S.S.G. § 4A1.2(e), they occurred too long ago to

be included in the calculation of criminal history. In response to the Court's observation, defense counsel stated:

Fair enough, your Honor. I mean, the reason that the impact of the additional points that are counted is so extraordinary is because he is already starting at 15 [years] as a result of [the three predicate convictions]. He got two, four, six, seven, he got ten of his points from things that happened a decade or more ago.

So even if you are not considering the juvenile convictions, all of the points, except for the three points for the crack cocaine conviction that we were just addressing on the supervised release violation on, every other one of his points happened when he was 26 or younger, your Honor, in a short span of time, a four or five-year period.

So even if we are not considering the fact of a juvenile offense because they were not calculated, I think the bulk of the points are stale anyway, your Honor, and would form the basis of a departure on that ground.

. . . .

So if the longest sentence he ever served before was under five years, and now he is looking at 19 years, that's a huge jump, and that is also affected by the fact that the juvenile convictions brought him up to the armed career criminal. That's how it plays in, your Honor, the jump from five [years] to nineteen [years] is enormous, and I think that in combination with the staleness of the convictions, *justifies a horizontal departure in the criminal history category.*

---

6. U.S.S.G. § 4A1.3 states, in relevant part, as follows: "If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likeli- hood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range."

Tr. of Oct. 18, 2002, at 25–26 (emphasis added).

▮ In imposing sentence, the Court refused to grant a horizontal downward departure to a lower criminal history category. The Court noted that defendant had, in total, "12 prior convictions, many of them for violent offenses spanning a period from adolescence into adulthood." *Id.* at 40. The Court thus found that "[t]he criminal history category does not, based on the timing and nature of the convictions . . . overstate the seriousness of [defendant's] criminal history." *Id.* The Court rejected any notion that defendant's young age at the time of the three predicate armed robberies was relevant to its conclusion:

> Raising [defendant's] age at the time of [the predicate] convictions [as] a ground for Section 4[A]1.3 departure conflates an objection to Section 924(e) with an objection to the calculation of the defendant's criminal history category. *The convictions underlying the Section 924(e) enhancement, which arise from crimes committed before [defendant's] 18th birthday, were not taken into account in the disputed criminal history computation.*
>
> Thus, the circumstances of those convictions *are irrelevant to inquire into the suitability of the defendant's criminal history category.*

*Id.* at 37 (emphasis added). We find no error in this analysis.

Defendant asserts, however, that the District Court improperly misunderstood its authority to depart downwardly when it made the following *alternative* holding:

> *Even if* [defendant's] age at the time of those [predicate] offenses [under § 924(e) ] were somehow relevant to a wholistic view of the impact of the armed career criminal enhancement, and defendant's criminal history category

under the guidelines, the plain language of Section 924(e), which as I said is the only element of the enhancement analysis that takes into account the juvenile convictions, indicates that Congress intended that such convictions be taken into account for this purpose.

> Section 924(e) specifically provides that the term "violent felony" includes acts of juvenile delinquency "involving the use of, carrying of a firearm or knife or destructive device," and further provides that the term "conviction" under the statute includes juvenile delinquency adjudications involving violent felony. *See* 18 U.S.C. § 924(e)(2)(B).
>
> All three of the robbery offenses underlying the Section 924(e) enhancement involve the use of a firearm. Section 924(e) thus closes any mitigation of the criminal history category based on defendant's age at the time of commission of the robberies, which as the Court has noted, have been taken into account in Section 924(e) analysis, but not in the calculation of the criminal history category.

*Id.* at 37–38 (emphasis added). The Court's conclusion that the young age at which defendant committed his three predicate crimes under § 924(e) was not a proper basis for departure is not material because it was offered merely as an alternative holding. The Court independently—and primarily—refused to depart because it concluded that the three predicate armed robberies in this case were entirely "irrelevant to . . . the suitability of the defendant's criminal history category," as part of a horizontal departure analysis. *Id.* at 37. As stated above, the District Court did not err in refusing to grant a horizontal downward departure on that basis.

■ Defendant nonetheless argues on appeal that, in addition to having requested a *horizontal* downward departure in the criminal history category, he was also arguing for a *vertical* downward departure in the offense level based on his young age at the time he committed each of the three predicate offenses under the ACCA. *See, e.g., United States v. Fuller,* 332 F.3d 60, 63, 66–67 (2d Cir.2003) (distinguishing between "vertical" and "horizontal" departures under the Sentencing Guidelines); *United States v. Miller,* 263 F.3d 1, 3 n. 1 (2d Cir.2001) (same). If the Court had actually considered a vertical departure, but rejected such a departure on the ground that it lacked the authority to depart on account of defendant's young age at the time of his predicate offenses, such a legal conclusion would be subject to *de novo* review on appeal.[7] *See United States v. Aponte,* 235 F.3d 802, 803 (2d Cir.2000) ("A district court's decision not to depart downward is ordinarily not reviewable, unless the refusal is due to an erroneous interpretation of law, or an erroneous view of the extent of its departure authority." (internal quotation marks omitted)); *United States v. Hurtado,* 47 F.3d 577, 585 (2d Cir.1995) ("If the district court's refusal to depart rested on a 'misapprehension' of its legal authority, an appeal is proper, and we review the propriety of that legal determination *de novo.*") (quoting *United States v. Haynes,* 985 F.2d 65, 68 (2d Cir.1993)); *cf. United States v. Diaz,* 176 F.3d 52, 121–22 (2d Cir.1999) ("[W]e apply a presumption that district judges understand the much-discussed processes by which they may, in circumstances permitted by law, exercise discretion to depart

from the sentence range prescribed by the Guidelines calculus." (quoting *United States v. Brown,* 98 F.3d 690, 694 (2d Cir.1996) (internal quotation marks omitted))).

■ A review of defendant's submissions before the District Court and of the Court's statements at sentencing, however, makes clear that defendant never proposed, and the District Court never considered, a vertical departure from the calculated offense level. Defendant's letter to the Court introduced his argument as follows: "If the Court finds that [defendant] is an 'armed career criminal', the Court should depart downwardly because [defendant's] criminal history category *overstates the seriousness of his criminal history* ...." (emphasis added). Defendant specifically asked "that the Court *depart downwardly to criminal history category IV.*" (emphasis added). At sentencing, defense counsel summarized his petition by stating that the circumstances described "justif[y] a *horizontal departure in the criminal history category.*" Tr. of Oct. 18, 2002, at 26 (emphasis added). In response to this argument, all of the Court's relevant statements, quoted above, support the conclusion that a horizontal departure is what the Court understood defendant to be seeking. *Cf. Fuller,* 332 F.3d at 67 (noting that vertical and horizontal departures are different and "must be kept distinct").

■ Because defendant's request for a vertical departure in the offense level was not raised in the District Court, and the District Court never considered it, the claim is waived or forfeited on appeal. *See*

---

7. The Government acknowledges that such a situation would present an open question. *See* Govt. Br. at 53 n.* ("While we have not found any case directly on point, Judge Swain may have had the legal power to depart vertically in offense level based on Belk's age at

the time of his predicate armed robberies ...." (citing *United States v. Rivers,* 50 F.3d 1126, 1130–31 (2d Cir.1995), for the more general proposition that a vertical departure based on the nature of the predicate offenses in an 18 U.S.C. § 924(c) case is permissible)).

*Hurtado,* 47 F.3d at 585 (holding that the defendant had "waived" his claim of entitlement to a downward departure by failing to raise the claim at sentencing); *United States v. Howard,* 998 F.2d 42, 49–50 (2d Cir.1993) (considering a sentencing objection not raised in the District Court to be "waived"). To the extent that plain error forfeiture analysis under Fed. R.Crim.P. 52(b) extends to a district court's failure to depart downwardly, we find no plain error in the District Court's failure *sua sponte* to consider and grant a vertical downward departure. *See United States v. Draffin,* 286 F.3d 606, 610 (D.C.Cir.2002) ("Ordinarily, [plain] error will not be found where the lawyer fails to propose a discretionary departure ground because under these circumstances, we assume that the district court knew and applied the law correctly." (internal quotation marks omitted)).

\* \* \* \* \* \*

We have reviewed all of defendant's arguments and conclude that they are without merit. The judgment of the District Court is affirmed.